UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------x
DARIO DI LELLO,                                    :
                          Plaintiff,               :
v.                                                 :
                                                   :
ANTHONY COVIELLO, individually, and in             :
his capacity as Town of Beekman Highway            :
Superintendent, MARY COVUCCI in her                :
capacity as the Town of Beekman Supervisor,        :
and TOWN OF BEEKMAN,                               :
                          Defendants.              :
--------------------------------------------------------------x
```

**OPINION AND ORDER**

20 CV 9180 (VB)

Briccetti, J.:

      Plaintiff Dario Di Lello, an attorney proceeding pro se, brings this action under 42 U.S.C. § 1983 and New York state law against Town of Beekman Highway Superintendent ("Supt.") Anthony Coviello, in both his official and individual capacities; Beekman Town Supervisor ("Supr.") Mary Covucci, in her official capacity only; and the Town of Beekman itself. Plaintiff brings claims for violations of his First, Fourth, and Fourteenth Amendment rights as well state law claims.

      Now pending is defendants' motion to dismiss the second amended complaint (Doc. #19 ("SAC")) pursuant to Rule 12(b)(6). (Doc. #22).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor as summarized below.

According to plaintiff, on December 5, 2018, Supt. Coviello improperly ordered the construction of a "speed hump" in front of plaintiff's house as a favor to Supt. Coviello's friends, who are also plaintiff's neighbors, without following applicable Town protocols.  Plaintiff is clear, however, "the underlying issue of the 'installation of the speed hump' is not the bases [sic] for this suit."  (SAC ¶ 27).  Rather, plaintiff alleges Supt. Coviello orchestrated a series of retaliatory acts aimed at silencing plaintiff's attempts to expose the impropriety of the speed hump:

(i)  On December 5, 2018, plaintiff complained about the speed hump to a Beekman Councilman and then subsequently received a telephone call from Supt. Coviello threatening to have plaintiff arrested if he continued to speak out against the speed hump.

(ii)  On January 22, 2019, Supt. Coviello directed one of the Highway Department's snowplows to "plow snow 16 feet from the curb onto [p]laintiff's property, scraping [plaintiff's] lawn topsoil and damaging [his] bushes."  (SAC ¶ 47).  On the same date, Coviello issued a formal warning to plaintiff stating he violated state and local law by moving snow from his property onto the Town roads.

(iii)  On February 5, 2019, Supt. Coviello sent a letter to the Beekman Fire Department—where plaintiff was a volunteer firefighter—threatening to order the Highway Department to stop cooperating with the Fire Department if it did not cut ties with plaintiff due to his purported slander of Coviello.

(iv)  On or around February 17, 2019, Supt. Coviello ordered a Beekman Highway Department snowplow to strike the mailbox of a friend who was assisting plaintiff to install security cameras around plaintiff's home, which plaintiff wanted installed out of fear of Supt. Coviello.

(v)  On March 11, 2019, twelve days after plaintiff served the Town of Beekman with Freedom of Information Law ("FOIL") requests regarding Supt. Coviello and the speed hump, Coviello sent a Highway Department truck to plaintiff's street—under the pretext of painting traffic lines on the speed hump—to strike plaintiff's mailbox, "moving it off its foundation." (SAC ¶ 54).

(vi)  On August 5, 2019, four days after plaintiff served defendants with a notice of claim regarding Supt. Coviello's conduct, plaintiff discovered his car's fog lights had been manually disconnected.

(vii)  On August 14, 2019, plaintiff's law practice received four "1 star reviews" within two hours on Google.  (SAC ¶ 71).

(viii)  On or around August 29, 2019, plaintiff's outdoor cable box cover was removed.

(ix)  On November 19, 2019, Supt. Coviello again ordered trucks from the Beekman Highway Department—purportedly plowing snow on plaintiff's street—to strike and destroy plaintiff's mailbox.

 Plaintiff alleges, "[t]aken as a whole, [Supt. Coviello's] conduct . . . was always intended to . . . chill free speech against anyone who spoke out in dissent against his position and performance."  (SAC ¶ 78).  According to plaintiff, Supr. Covucci both explicitly and tacitly supported Supt. Coviello's actions by "allowing [Supt. Coviello] . . . to create an atmosphere that effectuated a chilling effect on free speech for the community."  (SAC ¶ 11).

**DISCUSSION**

I.   <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.</u>

Iqbal, 556 U.S. 662, 679 (2009).[1]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

Ordinarily, the Court liberally construes submissions of a pro se litigant and interprets them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  In particular, the Court applies the pleading rules permissively when a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

Here, however, because plaintiff is a practicing attorney who admits familiarity with litigation, he is not entitled to such "special solicitude."  See Parent v. New York, 485 Fed. App'x 500, 502-03 (2d Cir. 2012) (summary order) (attorney with twenty years of experience

---

[1]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

litigating civil rights cases was not entitled to "special solicitude"); <u>see also</u> <u>Tracy v. Freshwater</u>, 623 F.3d 90, 102 (2d Cir. 2010) (noting the degree of solicitude afforded to <u>pro se</u> litigants varies according to the circumstances of each litigant and case, and that "a lawyer representing himself ordinarily receives no such solicitude at all").

II.   <u>Section 1983 Claims Against Supt. Coviello</u>

Plaintiff alleges Supt. Coviello directed several retaliatory actions against plaintiff for opposing construction of the "speed hump" in front of his house, in violation of the First Amendment, and violated plaintiff's procedural and substantive due process rights under the Fourteenth Amendment by using "excessive force" to destroy plaintiff's property.

A.   <u>First Amendment Retaliation</u>

Defendants argue plaintiff fails plausibly to plead the alleged retaliatory acts described above satisfy the elements of a First Amendment retaliation claim under Section 1983.

The Court agrees in part and disagrees in part.

1.   <u>Legal Standard</u>

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action against him, and (iii) the protected speech and adverse action are causally connected.  <u>Dolan v. Connolly</u>, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the first element, it is well established that "[t]he right[] to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment."  <u>Gagliardi v. Vill. of Pawling</u>, 18 F.3d 188, 194 (2d Cir. 1994) (plaintiff commencing Article 78 proceedings, attending public meetings and hearings, and complaining to

building inspector regarding alleged zoning violations plausibly alleged the first element of First Amendment retaliation claim).

With respect to the second element, an "adverse action" is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). A verbal threat may constitute an adverse action if it is sufficiently "direct and specific" to deter a similarly-situated individual of ordinary firmness from exercising his or her constitutional rights, see Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010), as can destruction of property. See, e.g., Collins v. Goord, 438 F. Supp. 2d 399, 419 (S.D.N.Y. 2006) (damage to inmate's typewriter plausibly constituted adverse action in retaliation for filing grievances). Additionally, a "combination of seemingly minor incidents [may] form the basis of a constitutional retaliation claim" when viewed in the aggregate. See Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

With respect to the third element, a plaintiff must allege a causal connection "sufficient to support the inference that the [protected] speech played a substantial part" in the adverse action. Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000). "Courts may infer a retaliatory motive from a variety of factors, including the timing" of the alleged retaliatory action and its "temporal proximity" to the initial grievance or complaint. Mateo v. Bristow, 2013 WL 3863865, at *6 (S.D.N.Y. July 16, 2013). There is no "bright line . . . for establishing temporal proximity," but a window of up to eight months between the speech and the adverse action is generally sufficiently close to support an inference of a causal connection. See, e.g., Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009).

Moreover, as with any claim for damages under Section 1983, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions" committed

the First Amendment violation.  Ashcroft v. Iqbal, 556 U.S. at 676.  Accordingly, a defendant

may not be held liable under Section 1983 solely because that defendant employs or supervises a

person who violated the plaintiff's rights.  See id. ("Government officials may not be held liable

for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the

elements of the underlying constitutional violation directly against the official."  Tangreti v.

Bachmann, 983 F.3d 609, 620 (2d Cir. 2020).

       2.    Analysis

          a.    Posting Negative Google Reviews, Uncovering Plaintiff's
                 Cable Box, and Disconnecting Plaintiff's Fog Lights

Plaintiff alleges that within a month of filing a notice of claim against defendants on

August 1, 2019, Supt. Coviello unleashed a flurry of professional and personal attacks on

plaintiff, specifically:  posting four "1 star reviews" on plaintiff's law practice within two hours

on Google; removing the cover from plaintiff's cable box outside of his house; and disconnecting

plaintiff's car's fog lights.

Defendants argue that even if each of these three alleged retaliatory actions made out

independent claims for retaliation under the First Amendment, plaintiff fails adequately to plead

the personal involvement of Supt. Coviello in any of the alleged constitutional deprivations.

The Court agrees.

Plaintiff has not supplied any facts tying Supt. Coviello to any of the three acts of alleged

retaliation beyond the "suspicious" timing of each action taking place shortly after plaintiff filed

his notice of claim.  (SAC ¶¶ 67, 71, 75).  But timing alone does not supply a plausible inference

that Supt. Coviello, "through his own actions," played a role in posting the negative Google

reviews, tampering with plaintiff's cable box, or disconnecting the fog lights in plaintiff's car.

See Ashcroft v. Iqbal, 556 U.S. at 676.  Moreover, plaintiff himself concedes he has "has no direct proof" of Supt. Coviello's involvement in cutting the fog lights in his car, and instead merely presumes Coviello's involvement because his mechanic told him there was a "zero . . . percent" chance both fog lights were disconnected by accident.  (SAC ¶ 68).  Such bare speculation, without more, does not permit an inference of personal involvement.

Accordingly, plaintiff's retaliation claim based on the alleged negative Google reviews and alleged tampering with plaintiff's cable box and fog lights must be dismissed.

**b.     Threat to Have Plaintiff Arrested**

Plaintiff alleges that on December 5, 2018, the very day plaintiff called his Town Councilman to complain about the speed hump, plaintiff received a telephone call from Supt. Coviello threatening to have him arrested if he continued to investigate the speed hump issue.

Defendants argue Supt. Coviello's alleged threat fails plausibly to make out a claim of retaliation under the First Amendment, apparently because plaintiff was not, in fact, arrested.

The Court disagrees.

Here, plaintiff alleges, "Mr. Coviello then stated [during the phone call] that he knew [p]laintiff was researching the process to remove the 'speed hump' and he threaten[ed] to have [p]laintiff arrested unless [he] stopped [his] efforts to . . . [remove] the 'speed hump.'"  (SAC ¶ 39).  Such an alleged verbal threat is sufficiently "direct and specific" to plead the second prong of a First Amendment retaliation claim.  See Mateo v. Fischer, 682 F. Supp.at 434; see also Perkins v. Perez, 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) (defendant's comment that he "would retaliate and make sure other officers in any facility [plaintiff] is transferred to retaliate as well" adequately alleges adverse action).  That plaintiff was ultimately not arrested does not sufficiently weaken the credibility of Coviello's alleged threat to abuse his authority to

have plaintiff arrested, particularly because the underlying protected speech was a complaint over Coviello's alleged abuse of his authority in the first place.

Accordingly, plaintiff's First Amendment retaliation claim against Supt. Coviello based on his alleged threat to have plaintiff arrested if he continued to investigate the speed hump may proceed.[2]

### c.   Destruction of Plaintiff's Mailbox

Defendants argue the March 11 and November 19, 2019 incidents—in which Beekman Highway Department vehicles allegedly destroyed plaintiff's mailbox—fail plausibly to make out a Section 1983 claim because plaintiff fails to plead the personal involvement of Supt. Coviello in the alleged attacks.

The Court disagrees.

Defendants do not dispute the alleged attacks on plaintiff's mailbox satisfy all three elements of a First Amendment retaliation claim.

With respect to the first and third elements, plaintiff plausibly alleges each mailbox incident took place shortly after a discrete attempt by plaintiff to complain or seek additional information about the speed hump. According to plaintiff, the March 11 strike on his mailbox took place approximately two weeks after plaintiff filed a FOIL request regarding the speed hump. Similarly, plaintiff contends the November 19 incident took place roughly three months after plaintiff filed a notice of claim on August 1. Such close "temporal proximity" between the

---

[2]    Defendants do not dispute that plaintiff satisfies the first and third elements of a First Amendment retaliation claim because the alleged threat was made on the day plaintiff called the Town Councilman to complain about the speed hump. See Gagliardi v. Vill. of Pawling, 18 F.3d at 194 ("The right[] to complain to public officials . . . [is] protected by the First Amendment."). Moreover, according to plaintiff, Supt. Coviello expressly cited plaintiff's complaints regarding the speed hump as the reason for the threat.

alleged strikes on plaintiff's mailbox and plaintiff's protected speech raises the plausible

inference the latter speech activities "played a substantial part" in motivating the former acts of

retaliation.  See Diesel v. Town of Lewisboro, 232 F.3d at 107.

With respect to the second element, plaintiff plausibly alleges the repeated damage to his

mailbox was substantial enough to deter a similarly situated individual from complaining about

the speed hump.  See Collins v. Good, 438 F. Supp. 2d at 419.  Indeed, plaintiff alleges his

similarly-situated friend in fact stopped assisting plaintiff in putting up security cameras around

his house only after Supt. Coviello ordered Beekman Highway Department vehicles to strike the

friend's mailbox as well.

Defendants nevertheless maintain that plaintiff fails plausibly to allege Supt. Coviello's

personal involvement in either retaliatory incident.  According to defendants, plaintiff's

"conclusory allegations" that Supt. Coviello directed the Highway Department vehicles to strike

plaintiff's mailbox "rest[] solely on threadbare recitations of [Supt. Coviello's] supervisory

liability," and thus fail plausibly to allege Coviello's personal involvement in the retaliation.

(Doc. #23 at 10).

The Court disagrees.

Taken together, plaintiff's well-pleaded allegations of Supt. Coviello's previous abuse of

his authority, along with the specific allegations that Highway Department vehicles under

Coviello's control carried out the attacks, raise a plausible inference that Coviello abused his

authority yet again by ordering the Beekman Highway Department employees to damage

plaintiff's mailbox.  Specifically, plaintiff alleges that by the time plaintiff's mailbox was first

struck in March 2019, Supt. Coviello had personally threatened plaintiff with arrest if he did not

stop complaining about the speed hump; issued a formal warning to plaintiff regarding a

purportedly baseless snow removal violation when plaintiff refused to comply with Coviello's threats; and threatened the Beekman Fire Department with the loss of his Highway Department's day-to-day cooperation if it did not terminate plaintiff's volunteer firefighter position.

Accordingly, plaintiff's First Amendment retaliation claim based on the alleged destruction of his mailbox may proceed.

> d.   <u>Plowing Snow Onto Plaintiff's Yard, Threatening Plaintiff with Town Violation, and Attempting to Terminate Volunteer Firefighter Position</u>

The remaining allegations of retaliation against Supt. Coviello are:  (i) on January 22, 2019, Coviello directed a Highway Department snowplow to move excess snow onto plaintiff's yard, scraping plaintiff's lawn and damaging his bushes; (ii) on the same date, Coviello issued plaintiff a letter warning he was violating state and local law for pushing snow from his property onto public roads; and (iii) on February 5, 2019, Coviello threatened to pull the support of his Highway Department if the Beekman Fire Department did not remove plaintiff as volunteer firefighter, all allegedly in retaliation for plaintiff's complaints about the speed hump.

Defendants argue plaintiff fails adequately to plead these three retaliatory actions were, ultimately, "adverse" to plaintiff.

The Court disagrees.

Here, plaintiff plausibly alleges that each act, although seemingly trivial on its own, "reach a critical mass" when viewed as part of an ongoing course of conduct alongside Supt. Coviello's alleged threat to have plaintiff arrested and his alleged orders to attack plaintiff's mailbox.  Such an unyielding, months-long crusade against plaintiff, if true, that could plausibly deter any similarly-situated individual from proceeding with his or her opposition to the speed

hump, satisfies the second element of a First Amendment claim.  See Phillips v. Bowen, 278

F.3d at 109.

Accordingly, plaintiff's First Amendment retaliation claim arising out of the aggregate of

the above incidents may proceed.[3]

B.      Fourteenth Amendment Due Process

The SAC appears to assert violations of plaintiff's procedural and substantive due process

rights under the Fourteenth Amendment[4] based on the alleged destruction of plaintiff's mailbox.

Defendants argue plaintiff fails to plausibly assert either claim.

The Court agrees on the procedural due process claim, but disagrees with respect to

substantive due process claim.

1.      Procedural Due Process

Defendants argue plaintiff's procedural due process claim is precluded by the availability

of post-deprivation relief.

The Court agrees.

"[A]n unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful post-deprivation remedy for the loss is available."  Hudson v.

---

[3]     Again, defendants do not dispute that each of the three alleged retaliatory acts satisfies
the first and third elements of a First Amendment claim:  plaintiff alleges each retaliatory action
took place within three months of plaintiff's December 5, 2018, conversation in which he
complained to a Beekman Town Councilman regarding the speed hump.

[4]     Plaintiff also asserts violations of the Fourth Amendment.  But when, as here, the alleged
excessive force takes place in the "non-seizure, non-prison," and non-law-enforcement context,
the controlling constitutional inquiry is the substantive component of the due process clause of
the Fourteenth Amendment.  See Rodriguez v. Phillips, 66 F.3d 470, 477 (2d Cir. 1995).  Thus,
plaintiff's Fourth Amendment claims must be dismissed.

Palmer, 468 U.S. 517, 533 (1984).  New York provides adequate post-deprivation remedies for plaintiff's claims regarding property damage in the form of Article 78 proceedings.  See N.Y.C.P.L.R. §§ 7803, 7804; see also Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims.").

Accordingly, plaintiff's procedural due process claim must be dismissed.

2.    Substantive Due Process

Defendants argue plaintiff fails plausibly to assert a substantive due process claim because the alleged damage to plaintiff's mailbox was not sufficiently malicious or sadistic.

The Court disagrees.

The Second Circuit has recognized in the "non-seizure, non-prisoner" context, individuals enjoy a "Fourteenth Amendment substantive due process right to be free from excessive force employed by government actors acting under the color of governmental authority."  Rodriguez v. Phillips, 66 F.3d 470, 477 (2d Cir. 1995).

The "core judicial inquiry" into claims of excessive force under the Fourteenth Amendment is whether plaintiff plausibly alleges "nontrivial" force applied "maliciously and sadistically to cause harm."  See Vazquez v. Spear, 2014 WL 3887880, at 4 (S.D.N.Y. Aug. 5, 2014).  "A claim of excessive force may be established even if the victim does not suffer serious or significant injury, if plaintiff can demonstrate that the amount of force used is more than de minimis, or, otherwise involves force repugnant to the conscience of mankind."  Cunningham v. Rodriguez, 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002).

Here, plaintiff adequately pleads the force applied to plaintiff's mailbox was at least "nontrivial," because the mailbox was ultimately allegedly destroyed.  Moreover, the alleged repetition of the attacks on plaintiff's mailbox, when considered in light of the broader pattern of alleged retaliation described above, reinforces the plausible inference that the intentional attacks on the mailbox are the type of malicious and arbitrary abuse of governmental power the Fourteenth Amendment was intended to protect against.

Accordingly, plaintiff's substantive due process claim arising out of the destruction of his mailbox may proceed.

III.    Monell Claims Against Town of Beekman

Defendants argue plaintiff fails plausibly to allege liability on the part of the Town of Beekman itself.

The Court disagrees.

A.    Legal Standard

Under Monell v. Dep't of Soc. Servs., a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  436 U.S. 658, 694 (1978).  Thus, to assert a Section 1983 claim against the Town of Beekman, plaintiff must show the existence of an official policy or custom causing injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question."  Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y.

2010).  "Whe[n] a plaintiff seeks to hold a municipality liable for a single decision by a municipal policymaker the plaintiff must show that the official had final policymaking power.  Moreover, the challenged actions must be within that official's area of policymaking authority."  Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008).  "Whether an official has final policymaking authority is a legal question, determined on the basis of state law."  Id. at 37.  But "the critical inquiry" is "whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit."  Id.

       B.     Analysis

       Here, plaintiff plausibly alleges Supt. Coviello had final policymaking authority to order three of the alleged retaliatory acts the Court has allowed to proceed:  the destruction of plaintiff's mailbox; scraping plaintiff's lawn by plowing excessive snow; and the notice warning plaintiff of the violation of state and local law regarding snow removal.

       "Turning to the state highway law, it is undisputed that [the] town superintendent of highways [is] responsible for the care and superintendence of town highways, including repair, inspection, description, removal of obstructions, and employment of road crews to assist with maintenance and repair."  Krmencik v. Town of Plattekill, 758 F. Supp. 103, 106 (N.D.N.Y.) (citing N.Y. High. Law § 140).  This responsibility includes removing snow from the highways and sidewalks adjacent to highways.  See, e.g., N.Y. High. Law § 140(2).  It also entails enforcing the rights and duties of the public with respect to the highways and recovering damages on behalf of the town.  See N.Y. High. Law § 140(13).

       Accordingly, plaintiff's allegations plausibly suggest Supt. Coviello directed his Highway Department vehicles to plow excess snow onto plaintiff's yard and strike plaintiff's mailbox—first while plowing snow and then again while painting lines over the speed hump—

pursuant to his authority to maintain, repair, and remove obstructions from the town's highways as Highway Superintendent.  Similarly, Supt. Coviello's letter threatening plaintiff with a violation of state and local law regarding snow on the highways plausibly arose out of Coviello's statutory authority to enforce New York state highway laws.

In light of the above, plaintiff's <u>Monell</u> claims based on Supt. Coviello's alleged actions shall proceed.[5]

IV.     <u>Section 1983 Claims Against Supr. Covucci</u>

Defendants argue plaintiff's Section 1983 claims against Supr. Covucci should be dismissed because they are redundant of plaintiff's claims against the Town of Beekman.

The Court agrees.

"[When] the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the [officer of that entity in its] official capacity is redundant."  <u>See</u> <u>Schubert v. City of Rye</u>, 775 F. Supp. 2d 689, 699–70 (S.D.N.Y. Mar. 31, 2011) (Section 1983 claims asserted against mayor and city council members in their official capacities dismissed when the municipality is the "real party in interest" due to an "alleged official policy of not remedying the situation of which [p]laintiff[] complain[s]").

Here, plaintiff pleads no additional facts regarding Supr. Covucci's involvement in the alleged constitutional violations discussed above beyond alleging she acted "[a]s the official final

---

[5]      Plaintiff also appears to allege <u>Monell</u> liability arising out of Supr. Covucci's deliberate indifference to the rights of Town citizens like plaintiff, and her tacit approval of a policy and practice of retaliation by the Beekman Highway Department.  But plaintiff supplies no allegations in support of a widespread pattern of retaliation that would constitute a municipal policy or custom, beyond the alleged retaliation against plaintiff himself.  <u>See</u> <u>Newton v. City of New York</u>, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("A custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct.").  Thus, plaintiff's <u>Monell</u> claim cannot be based on these allegations of Supr. Covucci's actions.

policy maker of Town of Beekman and in that capacity failed to supervise the Highway

Superintendent Anthony Coviello, and thus at all relevant times, her actions were the actions of

the Town of Beekman."[6]  (SAC ¶ 14).

Accordingly, plaintiff's Section 1983 claims against Supr. Covucci must be dismissed.

V.      State Law Claims

Plaintiff also asserts several claims under New York state law:  (i) violations of Sections

1, 8, and 12 of the New York State Constitution; (ii) intentional and negligent infliction of

emotion distress; and (iii) tortious interference with contract.  Defendants argue plaintiff's state

law claims are barred on certain statute-of-limitations and notice-of-claim grounds.  As discussed

below, the Court need not address these arguments because plaintiff's state law claims either fail

on the merits or are otherwise precluded by plaintiff's federal constitutional claims.

A.      Constitutional Claims

Defendants argue plaintiff's state law constitutional claims must be dismissed because

they are duplicative of his federal civil rights claims.

The Court agrees.

Under New York law, "the state constitutional tort is usually available only in cases in

which a plaintiff . . . has no alternative remedy."  Biswas v. City of New York, 973 F. Supp. 2d

504, 522 (S.D.N.Y. 2013) (citing applicable New York state law).  Moreover, "[a]ctions for

damages at common law and under [Section] 1983 are both considered adequate alternative

remedies that preclude the assertion of a claim for damages under the state Constitution."  Id.

---

[6]      Plaintiff also makes allegations regarding Supr. Covucci's "covering up" for Supt.
Coviello's purported malfeasance in constructing the speed hump in the first instance.  (See, e.g.,
SAC ¶ 109).  However, because plaintiff expressly disclaims "[t]he installation of the 'speed
hump' . . . is not the issue herein," the Court need not consider those allegations.  (See SAC ¶
28).

Here, plaintiff plausibly asserts claims for damages under Section 1983 for violations of the First and Fourteenth Amendments on substantially the same grounds as plaintiff's state law constitutional claims. Thus, "plaintiff is not without a remedy with respect to [his] injuries . . . and [his] state constitutional tort claim is redundant and precluded." Biswas v. City of New York, 973 F. Supp. at 522. Accordingly, the state law constitutional claims must be dismissed.

B.    Intentional and Negligent Infliction of Emotional Distress

Defendants argue plaintiff's claims for intentional and negligent infliction of emotional distress should be dismissed because they violate public policy.

The Court agrees plaintiff's emotional distress claims should be dismissed, but based on a failure to state a claim under Rule 12(b)(6). Thus, the Court need not address defendants' public policy argument.

New York courts have expressed a "longstanding reluctance" to recognize claims for either emotional distress claim. See Broadnax v. Gonzalez, 2 N.Y.3d 148, 153 (2004) (discussing claims for negligent infliction of emotional distress); Schaer v. City of New York, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011) (intentional infliction of emotional distress is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion").

Both claims require plaintiff plausibly to allege defendants engaged in conduct so "extreme and outrageous" as to cause plaintiff severe emotional distress. See Young v. Sw. Airlines Co., 409 F. Supp. 3d 110, 116 (E.D.N.Y. 2017) (citing New York state law cases). That is, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See id.

Here, Supt. Coviello's alleged numerous acts of retaliation, if true, reflect a disturbing pattern of abuse of authority, but none of those alleged actions, either individually or taken together, constitutes the type of rare conduct that is so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" such that it would cause extreme emotional distress in plaintiff.  See Howell v. N.Y. Post, 81 N.Y.2d 115, 122 (1993).

Accordingly, plaintiff's claims for intentional and negligent infliction of emotional distress must be dismissed.

C.      Tortious Interference with Contract

Defendants argue plaintiff fails plausibly to assert a claim for tortious interference with contract based on Supt. Coviello's alleged threat to stop cooperating with the Beekman Fire Department if it did not remove plaintiff from his volunteer firefighter position.

The Court agrees.

To state a claim for tortious interference with contract under New York law, a plaintiff must plead "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996).

Here, plaintiff concedes the Beekman Fire Department never yielded to Supt. Coviello's alleged demands to terminate plaintiff's volunteer firefighter status.  To the contrary, according to plaintiff, the Department promptly responded to Coviello insisting, "[t]here will be no action that will be taken by us since the member you referenced did not violate any of the Fire District or Company by-laws, policies or code of ethics."  (Doc. #5, Am. Compl., Ex. M).

Accordingly, because plaintiff fails plausibly to allege an "actual breach of the contract" or "damages resulting therefrom," the tortious interference with contract claim must be dismissed.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's First Amendment retaliation claim against Supt. Coviello and the Town of Beekman arising out of Coviello's alleged threat to have plaintiff arrested; the alleged destruction of plaintiff's mailbox; the allegedly excessive plowing of snow onto plaintiff's property; the alleged warning that plaintiff violated state and local law regarding snow removal; and the alleged attempt to have plaintiff terminated as a volunteer firefighter, shall proceed.

Plaintiff's Fourteenth Amendment substantive due process claim against Supt. Coviello and the Town of Beekman shall also proceed.

All other claims are dismissed.

By February 1, 2022, Supt. Coviello and the Town of Beekman shall file an answer.

By separate Order, the Court will schedule an initial conference in this matter.

The Clerk is instructed to terminate Mary Covucci as a defendant in this action.

The Clerk is further instructed to terminate the motion. (Doc. #22).

Dated: January 18, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge